**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO SAMANIEGO on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OMNI HOTELS MANAGEMENT CORPORATION, OMNI HOTELS CORPORATION, and TRT DEVELOPMENT COMPANY,<br><br>Defendants. | Case No. **'18CV1372 L    BGS**<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF FALSE ADVERTISING LAW, Business and Professions Code §17500, *et. seq.;*<br><br>2. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br><br>3. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750, *et seq.*; and<br><br>JUDGE: HON.<br>COURTROOM:<br><br>**DEMAND FOR JURY TRIAL** |

NOW COMES Plaintiff Armando Samaniego by and through his undersigned counsel, individually and on behalf of all others similarly situated, and hereby files this Class Action Complaint against Omni Hotels Management Corporation, Omni Hotels Corporation and TRT Development Company ("Omni" or "Defendants"). In support thereof, Plaintiff states and alleges as follows:

1

## NATURE OF THE ACTION

1. Defendants operate hotels in the United States, Mexico and Canada.

2. Defendants induce and mislead customers into booking rooms at Defendants' hotels by advertising room rates at low prices and adding a mandatory and undisclosed "resort fee" to the advertised rate during the booking process. The inclusion of the "resort fee" allows Defendants to advertise a lower price for their hotel rooms, although the "resort fee" is a mandatory fee that is automatically included as part of a customer's hotel stay. Because these fees are mandatory, there is no reason to omit them from the base room rate, other than to deceive customers. Just as a hotel could not tout a low room rate, then charge extra for the use of a bed after the guest arrived, it cannot exclude a mandatory fee for the use of a room from the room rate.

3. By advertising their rooms at artificially low prices, Defendants deceive consumers into believing that their rooms are comparably better-priced than rooms at hotels that fairly and accurately quote their room prices from the beginning of the booking process.

4. Indeed, it is well established that consumers latch-on to the initial price quote of a product or service and make final decisions based on what is believed to be the total price. Once an initial price is established in a reasonable consumer's mind, it is difficult for that consumer to make objective decisions based on subsequent changes to price. As such, consumers are unable to effectively and accurately evaluate products or services that are initially quoted at incorrect and deceptively low prices.

5. Research has confirmed that quoting artificially lower prices, but charging higher prices through the purchasing process deceives consumers and hurts competition, because consumers tend to over-value artificially low priced products/services.

6. The FTC has taken this research into consideration and upon conducting its own investigation has determined that initially quoting low prices for room rates and then charging resort fees after quoting a low price is deceptive and harmful to competition.

7. Defendants engage in behavior that is deceptive and that the FTC has deemed as harmful because they quote initial room rates without including a resort fee. After deceiving reasonable consumers, including Plaintiff and the Class, and inducing them to seek Defendants' rooms and services, Defendants disclose the additional resort fee. However, this disclosure is meaningless as reasonable consumers, including Plaintiff and the Class, have already valued Defendants' rooms at the originally quoted rate.

8. As a result of Defendants' false advertising and deceptive misrepresentations regarding the true price of their hotel rooms, Plaintiff and the members of the proposed class have been harmed because they purchased rooms that they otherwise would not have purchased. Plaintiff and the Class have also been harmed because Defendants' conduct has made Plaintiff and the Class unable to effectively and accurately compare hotel room rates. As a result of Defendants' conduct, Plaintiff and the Class have been injured by having to pay more than the advertised rate by the inclusion of the mandatory "resort fee" and thus have been harmed by Defendant's unfair and deceptive acts and practices.

9. Plaintiff brings this action on behalf of himself and other similarly situated consumers who have booked rooms at Defendants' hotels to halt the dissemination of Defendants' false, misleading and deceptive advertising, correct the deceiving perception it has created in the minds of consumers and obtain redress for those who have booked rooms at Defendants' hotels. Based on violations of state unfair completion laws, Plaintiff seeks injunctive and monetary relief for consumers who have booked rooms at Defendants' hotels.

## THE PARTIES

10. Plaintiff, Armando Samaniego is an adult individual residing in San Diego. Plaintiff is a citizen of the State of California. During the Class Period Plaintiff booked a hotel room from Defendants and has been injured by paying Defendants' "resort fee" in addition to the quoted room rate. Plaintiff specifically relied on Defendants' misleading price quotes in booking the room. Defendants quoted the rate from the hotel room at $269 per night. During the booking process, a $30 fee was added.

3
PLAINTIFF'S CLASS ACTION COMPLAINT

11. Defendant Omni Hotels Management Corporation is a privately held Delaware corporation, headquartered in Irving, Texas at 420 Decker Drive, 75062. Omni Hotels Management Corporation is wholly-owned by Omni Hotels Corporation.

12. Defendant Omni Hotels Corporation is a privately held Delaware corporation, headquartered in Dallas, Texas at 4001 Maple Avenue, 75219. Omni Hotels Corporation is wholly-owned by TRT Development Company.

13. Defendant TRT Development Company is a privately held Delaware corporation, headquartered in Dallas, Texas at 4001 Maple Avenue, 75219.

14. The Defendants can be served through Corporation Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701.

15. According to the Defendants' website, the Defendants operate 60 hotels in the United States, Mexico and Canada.[1]

## JURISDICTION AND VENUE

16. This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because: (i) the Class (as defined below) has more than 100 Class members; (ii) the amount at issue exceeds five million dollars, exclusive of interest and costs; and (iii) minimal diversity exists as Plaintiff and Defendants are citizens of different states.

17. This Court has personal jurisdiction over Defendants because Defendants have advertised, marketed, promoted, and booked hotel rooms in California and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their advertisement, marketing, promotion and/or booking of hotel rooms within this State to render the exercise of jurisdiction by this Court permissible.

---

[1] OMNI HOTELS, https://www.linkedin.com/company/omni-hotels (last visited June 19, 2018).

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendants transact substantial business in this District.

## FACTUAL BACKGROUND AND ALLEGATIONS

### A. Resort Fees

19. Since the late 1990s and earlier 2000s resort fees have been on the rise.

20. Indeed, in 2013, U.S. hotels collected an estimated $2.1 billion dollars in resort fees alone, about double the amount from a decade ago.[2]

21. A resort fee is a mandatory fee that hotels add on to the actual room rate. The fee supposedly covers a host of services, but are mandatory and are charged whether or not a consumer chooses to use the services the resort fee supposedly covers.

22. Defendants charge resort fees at some of their California hotels and purport this fee for amenities that are provided but, the consumer may elect not to use or may otherwise expect to be provided as part of the price of the hotel purchase, *i.e.* the use of a towel at the resort pool.

23. The Defendants, as well as other hotel operators, disclose resort fees at certain times after they disclose room rates for hotels. As such, the practice of charging resort fees is a form of "drip pricing," which is "a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process."[3]

### B. Resort Fees and Drip Pricing Hurt Consumers and are Harmful to Competition

---

[2] Christopher Elliott, *Travelers want 'resort' fees to check out – permanently*, USA TODAY (Jan. 13, 2014), http://www.usatoday.com/story/travel/hotels/2014/01/12/hotel-resort-fee-service-charge/4441287/.

[3] Warning Letter, Federal Trade Commission (November 2012) (hereinafter "Warning Letter"), *available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be/121128hoteloperatorsletter.pdf.

24. Research has shown that the "drip pricing" model has a powerful ability to influence and mislead consumers to spend more than they otherwise intend to or buy a product or service that they do not need or want.

25. Such research demonstrates that the "base," or originally disclosed price, detrimentally influences consumers, rather than the ancillary fees that ultimately increase the total price for the relevant product or service.

26. For example, research from the Stern School of Business has shown that consumers were more likely to buy products or choose services when those products and services were advertised using the "drip pricing" model and that disclosure of mandatory fees reduced buying intentions.[4]

27. This shows that "drip pricing" confuses consumers and deceptively influences them into believing that the price they are paying is not as high as it actually is. The lower "base" price leads to lower price perception and in turn leads to higher demand for the drip priced product/service over comparable products/services that have all fees and costs disclosed from the beginning.

28. Other research has shown that the use of "drip pricing" in advertisement and sales leads to inefficient market outcomes because consumers tend to overvalue the original advertised price and become misled once additional mandatory fees are disclosed later in the transaction.[5]

29. Again, this shows the deceptive nature of "drip pricing" and demonstrates its harmful consequences on both consumers and honest business entities.

30. "Drip pricing" effectively "anchors" consumers to the initial numeric information they are presented, often misleading them and preventing them from

---

[4] Vicki Morwitz & Shelle Santana, *How consumers react to partitioned and drip pricing: Evidence from the lab*, *available at*, https://www.ftc.gov/sites/default/files/documents/public_events/economics-drip-pricing/vmorwitz.pdf.

[5] Federal Trade Commission, *A Conference On The Economics Of Drip Pricing*, 22-28 (May 21, 2012), *available at*, https://www.ftc.gov/sites/default/files/documents/public_events/economics-drip-pricing/transcript.pdf.

6
PLAINTIFF'S CLASS ACTION COMPLAINT

adjusting to additional information regarding increases in price.[6]  In other words, it is know that reasonable consumers grasp on to the "headline" advertised price, then fail to adjust their perception of this price.

31.   "Drip pricing" also takes advantage of the fact that consumers "endow" themselves to the "headline" price.  Once reasonable consumers see the initial advertised priced, they get used to buying the product, service, room, etc. at that initial price.  This creates a type of loss aversion because consumers feel differently about the product, service, room then they did before they started and thus, mistakenly value it over other products, services, rooms which are of equal or greater value.[7]

32.   Finally, "drip pricing" lures consumers into transactions with artificially low prices and thus, misleads yet another behavioral process; commitment.[8]  Once a consumer is invested in a transaction, the consumer is less likely to walk away.

33.   In short, "drip pricing" creates expectations about value and by advertising a price without a resort fee, and then disclosing that fee at or after payment, it deceives consumers about the actual value of the rooms they are booking.  This deception hurts consumers in multiple ways, including inducing them to buy a product they do not need or want and preventing them from operating efficiently and properly evaluating competitive markets.

34.   Drip pricing also hurts competition because consumer purchasing decisions are effectively driven by the cheapest headline price. So, companies that include all prices up-front are disadvantaged because the deceiving "drip priced" headline prices of competitors mislead consumers into believing that companies that include all costs up front are not as good as their competitors.[9]  Exemplary of this fact is a United Kingdom law that required all airlines to include all taxes and charges in the headline price.  The

---

[6] *Id.* at 62-63.
[7] *Id.* at 63.
[8] *Id.*
[9] *Id.* at 63-64

7
PLAINTIFF'S CLASS ACTION COMPLAINT

first airline to comply with this law lost 5% of consumer traffic to its website while it waited for its competitors to comply.[10]

35. When reasonable consumers are shopping for a hotel and initially see a low "drip priced" room rate they will value that hotel room based on the initially disclosed, artificially low rate. Even if the additional fees are disclosed later in the booking process a reasonable consumer is still likely to believe that the "drip priced" room is comparatively better than another hotel room with all fees originally disclosed. To be sure, a survey of 3,000 consumers showed that 75% of consumers objected to "drip pricing" generally, and 44% said they would have bought elsewhere had they known the total cost up-front.[11]

## C. The FTC Has Stated That Drip Pricing and Resort Fees Are Deceptive and Urged Hotels to Display All Mandatory Charges in the Base Room Rate Advertised To Customers

36. In May of 2012, the FTC held a conference on "drip pricing."[12]

37. A common complaint raised by consumers during this conference involved the mandatory charge of hotel resort fees in addition to the quoted room price.[13]

38. The FTC reviewed and number of online hotel reservation sites and found:
> [S]ome hotels exclude resort fees from the quoted reservation price. Instead, the "total price" or "estimated price" quoted to consumers includes only the room rate and applicable taxes. At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price. In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print. A few sites fail to

---

[10] *Id.* at 64.
[11] *Id.* at 69.
[12] Warning Letter, *supra*, note 3.
[13] *Id.*

identify applicable resort fees anywhere, and instead inform consumers that other undefined fees may apply.[14]

39.     The FTC concluded that these practices were deceptive because they misrepresented the price consumers could expect to pay for their hotel rooms. In a warning letter the FTC explicitly stated "[w]e believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel. While a hotel reservation site may breakdown the components of the reservation estimate . . . the most prominent figure for consumers should be the total inclusive estimate."[15]

40.     In a press release announcing the warning letters, Jon Leibowitz, the FTC Chairman, condemned the practice of drip pricing and stated "[c]onsumers are entitled to know in advance the total cost of their hotel stays. So-called 'drip pricing' charges, sometimes portrayed as 'convenience' or 'service' fees, are anything but convenient, and businesses that hide them are doing a huge disservice to American consumers."[16]

**D.     Defendants' Use Drip Pricing and Resort Fees to Deceive Consumers into Booking Rooms at Defendants' Hotels**

41.     Defendants routinely and uniformly misrepresent the total cost of their hotel stays.

42.     Plaintiff and the members of the Class booked a hotel reservation by telephone, either by calling the general contact phone line for Defendants 1-888-444-OMNI or by calling Defendants' dedicated reservation phone lines at 1-800-THE-OMNI, at the following of Defendants' properties: 1) Omni San Diego Hotel, 675 L Street, San Diego, CA 92101; 2) Omni Rancho Las Palmas Resort & Spa, 41000 Bob Hope Drive,

---

[14] *Id.*

[15] *Id.*

[16] Press Release, Federal Trade Commission, FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive (Nov. 28, 2012), *available at*, https://www.ftc.gov/news-events/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other.

9
PLAINTIFF'S CLASS ACTION COMPLAINT

Rancho Mirage, CA 92270; 3) Omni La Costa Resort & Spa, 2100 Costa Del Mar Road, Carlsbad, CA 92009; 4) Omni San Francisco Hotel, 500 California Street, San Francisco, CA 94104; 5) Omni Los Angeles at California Plaza, 251 South Olive Street, Los Angeles, CA 90012 ("Subject Properties").

43. Plaintiff and the members of the Class were charged resort fees during the booking process. Defendants charge these resort fees at the Subject Properties for "amenities," including in-room Wifi, access to the hotel gym, free local and 800 access calls, and in-room coffee and tea, that are offered for free at other of Defendants' hotel locations.

44. Upon information and belief, Defendants use a uniform system for reservations at each of the Subject Properties.

45. During the week of May 13, 2018, Plaintiff made a reservation by phone for a one night stay at the Omni Resorts La Costa Resort & Spa, (hereafter, "La Costa").

46. Plaintiff was quoted a room rate of approximately two hundred sixty nine dollars ($269.00) per night. Although the quote stated, "excludes taxes and other charges," it was not disclosed that "other charges" included mandatory fees, namely and exclusively a thirty dollar ($30.00) resort fee. Plaintiff relied on this initial quote in making his decision to choose La Costa and proceed with the booking process.

47. The purpose and effect of Defendants' booking process is to deceive and mislead consumers in regards to Defendants' true room rates. Indeed, at no time prior to or during actual payment do Defendants present to consumers a straightforward estimate and/or itemization of Defendants' true room rate: 1) Defendants advertise to consumers room rates that are substantially lower than the true room rates because the resort fees are not included.

48. This booking process, along with the language and information provided therein, all led Plaintiff, the Class, and similarly situated reasonable consumers to believe that the amount they would be billed would not include a mandatory resort fee.

49. Defendants fail to advertise the true room rates because Defendants seek to gain a competitive advantage by advertising rooms at lower rates than the competition and because Defendants know that consumers will rely on the advertised rate in making decisions in selecting Defendants hotels for stays.

50. Given this deception a reasonable consumer would likely be unaware of the resort fee charge, especially given the fact that the advertised rate only states that "tax and other charges" are not included, but does not specify that the "other charges" language includes and exclusively stands for a mandatory resort fee charge.

51. Defendants' practice of advertising rooms at prices lower than their true rate understates the true price of booking a room at the Defendants' hotels and as a result is misleading and deceptive.

52. By recovering an additional, baseless fee in the form of a resort fee Defendants are able to reduce their advertised room rates by the amount of the resort fee without any negative impact when price-conscious consumers compare rates across hotels. Defendants essentially have devised a mechanism through use of resort fees, whereby they advertise what appear to be low room rates, but in actuality are not.

53. Defendants' conduct has harmed Plaintiff and the Class by misleading them into purchasing rooms at Defendants' hotels. Defendants' conduct has also harmed Plaintiff and the Class by preventing them from accurately analyzing the market for hotel rooms. By initially quoting room rates without mandatory resort fees, Defendants have created a misleading perception in the mind of Plaintiff and the Class. This deception led Plaintiff and the Class to over-value Defendants' hotel rooms. As such, Plaintiff and the Class purchased hotel rooms they otherwise would not have purchased and have been harmed as a result.

54. Defendants' conduct has also harmed competition generally. Because Defendants' conduct has created a false perception in relation to its hotel rooms, consumers have undervalued comparable hotel operators that include all fees and costs in the initial price quote. Thus, Defendants' conduct has deceived consumers to the false

belief that Defendants' hotel rooms are superior to comparable competitors. This of course is not the case. The only difference between Defendants hotel rooms and the hotel rooms of their honest competitors is the initially quoted price advertised to the consuming public, including Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action on his own behalf and on behalf all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

56. The Class is defined as follows:

> All persons who, within the statute of limitations, were charged one or more resort fees at one of Defendants' properties within the United States and its territories (the "Class").
>
> Excluded from the Class are Defendants; officers and directors of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendants.

57. This action satisfies the procedural requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.

58. The conduct of Defendants has caused injury to members of the Class.

59. The Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed class contains thousands of persons who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

60. The members of the Class are readily ascertainable, as records maintained by Defendants can identify them. Notice can be provided by means permissible under the Federal Rules of Civil Procedure.

61. There are substantial questions of law and fact common to the Class, which predominate over any questions affecting individual Class members. These questions include, but are not limited to, the following:

      a.    Whether the representations discussed above are misleading or objectively likely to deceive a reasonable consumer;

      b.    Whether Defendants falsely or deceptively represented that their room rates were lower than their true price;

      c.    Whether Defendants' conduct violates public policy;

      d.    Whether Defendants' conduct constitutes violations of the asserted laws;

      e.    Whether Defendants engaged in false and misleading advertising;

      f.    Whether Plaintiff and the class have sustained monetary loss and the proper measure of that loss, as well as the amount of revenues and profits received by Defendants;

      g.    Whether Plaintiff and the class are entitled to remedies other than monetary damages, such as corrective advertising or injunctive relief;

62.    Plaintiff's claims are typical of the claims of all members of the Class. Plaintiff, like the members of the Class, booked a room with the Defendants, was quoted a room rate that did not include a mandatory resort fee and thereafter was charged and paid a higher price that included a resort fee. As a result, both Plaintiff and the members of the Class have been harmed by the same conduct. Additionally, Plaintiff is advancing the same claims and legal theories on behalf of himself and the members of the Class to redress the injuries and recoup the damages caused by Defendants' illegal conduct.

63.    Plaintiff is a member of the putative Class, possesses the same interests as the Class, and suffered the same injuries as Class members, making his interests coextensive with those of the Class. The interests of Plaintiff and the Class are aligned so that the motive and inducement to protect and preserve these interests are the same for each. Plaintiff also has retained counsel experienced in complex consumer class action litigation, who intend to prosecute this action vigorously.

64.    A class action is superior to all other available methods for a fair and efficient adjudication of this controversy since joinder of all members of the Class is

impracticable. Furthermore, the damages and other financial detriment suffered by individual class members is relatively small in comparison with the burden and expense associated with individual litigation, which make it impossible for them to individually redress the harm done to them. Proceeding as a class action will permit an orderly and expeditious administration of the claims of Class members, will foster economies of time, effort and expense and will ensure uniformity of decision, preventing inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this litigation as a class action.

65.   Because Defendants have acted and refused to act on grounds generally applicable to the Class described herein, injunctive relief is appropriate. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire class, preventing Defendants from further engaging in the acts and conduct described herein and requiring Defendants to provide full restitution to Plaintiff and the Class members.

66.   Unless a Class is certified, Defendants will retain monies that were taken and received from Plaintiff and the Class members as a result of Defendants' conduct. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be harmed and deceived as a result.

## FIRST CAUSE OF ACTION

**(California False Advertising Law – Cal. Bus. & Prof. Code § 17500, et seq.)**

67.   Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.

68.   Plaintiff brings this claim individually and on behalf of the class.

69.   Defendants engaged in unlawful conduct under § 17500, et seq., by advertising its room rates at prices that understate their true cost and by misrepresenting and concealing mandatory resort fees.

70. Defendants specifically advertised and quoted that their room rates were lower than they actually were by initially quoting Plaintiff and members of the Class a room rate that did not include a mandatory resort fee.

71. Defendants knew, or reasonably should have known that their advertisements, representations and/or omissions were false, deceptive, untrue and/or misleading.

72. Defendants' illegal conduct also constitutes as unlawful and Defendants were provided an unlawful and unfair advantage by representing that their room rates were lower than they actually were. Had Defendants accurately and honestly represented the true price of booking a room at Defendants' hotels, Defendants would not have booked rooms at their hotels or Defendants would have booked a substantially less number of rooms.

73. Plaintiff and the Class reasonably relied upon Defendants' representations and/or omissions made in violation of § 17500, et seq. But for Defendants' unlawful conduct, Plaintiff and the Class would not have booked rooms at Defendants' hotels. Defendant's artificial room rates induced Plaintiff and the Class to book rooms at Defendants' hotels and but for Defendants' deceptively low price quotes, Plaintiff and the Class would have book hotel rooms at other comparable hotel properties.

74. On information and belief Plaintiff also alleges that Defendants' unlawful conduct is likely to and has deceived the general public.

75. Plaintiff is informed and believes, and thereupon alleges, that as a further direct and proximate result of Defendants' illegal conduct, Defendants have received money from Plaintiff, the Class and the general public. Defendants continue to hold the money obtained through this violation of § 17500, et seq. for its sole benefit.

76. As Defendants continue to engage in the unlawful conduct described herein, Plaintiff, the Class Members and other members of the general public are in current and ongoing need of protection from Defendants' false and deceptive marketing and advertisement.

77. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, seeks equitable relief, in the form of an order requiring Defendants to refund to Plaintiffs and the Class all monies paid concerning the misleading resort fees and, in addition, an order requiring Defendants to inform the consuming public the true and full price of booking a room at Defendants' hotels.

## SECOND CAUSE OF ACTION

### (California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, et seq.)

78. Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the class.

80. Defendants engaged in fraudulent conduct under § 17200, et seq., by advertising their room rates at prices that understate their true cost and misrepresenting and concealing mandatory resort fees.

81. Defendants' conduct is unlawful under § 17200, et seq., in that it violates the False Advertising Law, California Business & Professions Code § 17500, et seq. Defendants' conduct is unlawful under the Federal Trade Commission Action, Section 5, 15 U.S. Code § 45, which is designed to prevent unfair methods of competition.

82. Defendants' conduct is unfair under § 17200, et seq., in that it offends established public policy or is immoral, unethical, oppressive, unscrupulous, unconscionable or substantially injurious to Plaintiffs and the Class members. The harm to Plaintiffs and the Class arising from Defendants' conduct outweighs any legitimate benefit Defendants have derived from the conduct.

83. Indeed, Defendants engaged in false and misleading advertising and also engaged in unfair competition by securing an illegal competitive advantage by falsely representing the true price of booking its rooms.

84. By quoting room rates without resort fees included in the quoted price, Defendant created a false perception in the minds of Plaintiff and the Class. This

deception led Plaintiff and the Class to over-value Defendants' hotel rooms and, at the same time, under-value the hotel rooms of Defendants' honest competitors.

85. Although there were reasonably available alternatives to Defendants' conduct described herein, Defendants chose to deceptively quote their hotel prices and thus take advantage of a false benefit; Defendants signaled that their room rates were lower and thus more desirable than the hotel rooms of competitors, but the hotel rooms were the same and similarly priced.

86. Defendants' conduct, misrepresentations and omissions were likely to mislead a reasonable consumer.

87. Plaintiff and the Class relied on Defendants' misrepresentations and omissions and but for Defendants' violations, would not have booked a room at Defendants' hotels. Therefore, Plaintiff and the Class have suffered injury in fact and lost money as a direct and proximate result of Defendants' conduct.

88. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, seeks equitable relief, in the form of an order requiring Defendants to refund to Plaintiffs and the Class all monies in relation to Defendants' assessment of resort fees and, in addition, an order requiring Defendants to inform the consuming public of the true price of booking a room at Defendants' hotels.

## THIRD CAUSE OF ACTION

### (Violation of California Consumer Legal Remedies Act, California Civil Code § 1750, et seq.)

89. Plaintiff incorporates and re-alleges each and every allegation contained above as if fully set forth herein.

90. Plaintiff brings this claim individually and on behalf of the class.

91. This action is brought pursuant to the Consumer Legal Remedies Act (the "Act").

92. Defendants are "persons" as defined by California Civil Code § 1761(c).

93. Plaintiff and members of the Class are "consumers" within the meaning of

California Civil Code § 1761(d).

94. The hotel rooms and their booking are "goods" within the meaning of the Act.

95. Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class, which were intended to result in, and did result in, the booking of hotel rooms at Defendants' hotels:

> (5) Representing that goods or services have . . . characteristics . . . [or] benefits . . ., which they do not have;
>
> (7) Representing that goods or services are of a particular standard [or] quality . . . if they are not;
>
> (8) Disparaging the goods, services, or business of another by false or misleading representation of fact;
>
> (9) Advertising goods or services with intent not to sell them as advertised;

96. Plaintiff requests that this Court enjoin Defendants from continuing to employ the illegal methods and practices alleged herein and grant restitution and disgorgement pursuant to California Civil Code § 1782(d).

97. Pursuant to § 1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 and demanded that it correct the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Defendants failed to respond to Plaintiff's letter or agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act. Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate against Defendants.

98. Pursuant to § 1780(d) of the Act, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

1. Certifying the Class as requested herein;
2. Awarding Plaintiff and the proposed Class members damages;
3. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;
   a. Enjoining Defendants from continuing the unlawful practices as set forth herein and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay; and
   b. Ordering Defendants to engage in a corrective advertising campaign;
4. Awarding injunctive relief as permitted by law or equity, including enjoining;
5. Awarding statutory and punitive damages, as appropriate;
6. Awarding attorneys' fees and costs; and
7. Providing such further relief as may be proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury of all issues so triable.

DATED: June 21, 2018                    Respectfully submitted,

/s/ *Todd Carpenter*
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
1350 Columbia Street, Suite 603
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
tcarpenter@carlsonlynch.com